NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
October, 1879.

MATTER OF STOVER.

*In the matter of the probate of the last will and testament of* JOHN A. STOVER, *deceased.*

The testator was born and resided at Smyrna, Chenango County, in this state, until within twelve years of his death, when he came to New York, and stopped at a restaurant which he declared to be his headquarters, and where he received his letters. During these twelve years he traveled from place to place in this state and in New Jersey, and often registered himself as coming from New Jersey, and sometimes as from Smyrna. During the latter years of his life, his stay in New York did not average a month per annum, he had no permanent room there, and his baggage consisted of a sachel. He died in this state. In his will, written by himself, he described himself as of Smyrna, Chenango County,—*Held*, that the testator had not lost his domicile of origin in Chenango County, and that the Surrogate of New York County had no jurisdiction to probate his will.

Where the evidence leaves the question of testator's domicil in doubt, his declaration in his will, written by himself, on the subject will be conclusive.

APPLICATION for the probate of the will of John A. Stover, deceased. Objection was raised to the jurisdiction of the court, on the ground that the deceased was not an inhabitant of the County of New York.

The facts appear sufficiently in the opinion.

DWIGHT H. OLMSTEAD, *for proponent.*

J. B. ELWOOD *and* D. C. BROWN, *for contestant.*

THE SURROGATE.—The statute provides that the Surrogate of each county shall have exclusive jurisdiction within his county, to take proof of the last wills and testaments of all deceased persons, where the testator at, or immediately previous to, his death, was an inhabi-

tant of the county of such Surrogate, in whatever place such death may have happened. (3 *R. S.*, 76, § 24, subdivision 1 [6 ed.].) This is the only subdivision relating to the question of jurisdiction applicable to this case, for the reason that decedent died in this state, and not in this county.

The testimony shows that decedent was an unmarried man, born in Chenango County in this state, where he resided until some twelve years ago, at which time he sold a farm that he owned, and some of his furniture. A small portion of the furniture, however, was not sold, but deposited with a relative in that county, on which he paid storage to the time of his decease. He visited his old home about once a year, remaining with some of his relatives and friends, and collecting some interest on notes which he held against persons residing in that county. About twelve years ago he came to the city of New York, and from time to time deposited money in savings banks, and drew out money for the purpose of investment upon property in this city. While in the city he stopped at a restaurant called the "Home-Made Dining Rooms," on Greenwich street. He said, to some of his relatives and acquaintances, that his "headquarters" were at that saloon, where letters might be addressed to him. It appears, in evidence, that he occupied an inferior room at the dining saloon temporarily, as a transient customer, sometimes occupying one room, and sometimes another, but on his departure he never retained his room. Some of the witnesses testify that when he first came to the city, they were of the impression that he remained the greater part of the year here, visiting Saratoga and Canada in the summer season, and

New Jersey in the winter. But it appears, by the testimony of the proprietor of said dining-room, that he usually came in the spring and fall, remaining a few days at a time, and for the last few years before his death, the aggregate time that he remained there was, on the average, less than a month per annum. In consequence of ill-health, he was in the habit of visiting different places in New Jersey, where he had some real estate, and visited relatives there. He also, in the winter season, went to Dover, Delaware, and in the summer was in the habit of visiting Chenango County, his native place, Saratoga, Rochester, Lockport and Canada. He came to the dining saloon with no luggage except a sachel. It also appears that he was in the habit of registering his name, at the dining saloon, as from Metuchin, Raritan, but generally New Jersey. There is no evidence that he ever registered himself as of New York, or of Smyrna, his native place. It appears, also, that he said to a lady, at whose house in Nyack, Rockland County, he died, that his "headquarters" were at the dining saloon aforesaid, where he received his letters, and that if he were not there, they would be forwarded to him. The testimony also shows that he was in the habit of stopping at a hotel in Lockport kept by one Pike, where he registered himself as from Smyrna, his native place. On one occasion he complained of not having been appointed guardian of the minor children of a deceased brother, who died at Smyrna, and was told that it would have been inconvenient for him to attend to the duties of guardian, as he did not reside in Smyrna, but in New York; he answered that he did not reside in New York, but resided in Smyrna, and always expected

to. It also appears that on another occasion, when one Titus, who tried to persuade him to give some money to a relative, Mrs. Seymour, asked him why he stayed in New York so much, he said that he was letting some money, and that if he had any home, it was in Chenango County. Some five or six years before his death, he said he resided in New Jersey, and had voted or would vote there. The will in question appoints a relative of his, residing in New York, together with the keeper of the dining saloon mentioned, as his executors. It further appears that the will in question is in the handwriting of the decedent, and he commences the instrument as follows: "John Adam Stover, of Smyrna, Chenango County, New York." This is the substance of the testimony bearing upon the question of the residence of the decedent at his death.

In Isham v. Gibbons (1 *Bradf.*, 69), it was held that in the provisions of the statutes relating to testamentary matters, the terms "residence and inhabitant" have the same acceptation, and are to be construed in reference to the domicil of the decedent. In Graham v. Public Administrator (4 *Bradf.*, 127), it was held that a domicil could be acquired only by residence with the intention of remaining at the new place of abode; that intention alone was not sufficient, and that it was a well settled principle, that for the purpose of succession, every person must have a domicil somewhere, and that the *domicil of origin* is not lost, until a new one is acquired.

It is clear that the decedent's domicil of origin was in Chenango County, and that he did not lose that domicil of origin until he had departed therefrom and located elsewhere, with an intention of remaining there. Now,

where are the evidences of an intention to remain in New York, which are not equally strong as applied to Dover, Metuchin, Raritan and New Jersey? He appeared to have been a roving itinerant, and his stay at several other places must have been considerably longer than in New York. There is nothing as to his mode of enjoying and occupying his room at the dining-saloon to indicate a design permanently to remain there. The only question needing consideration is the fact that he made his investments here. Indeed, so far as his own declarations by registering his name are concerned, they indicate a different residence than New York, and it is worthy of remark that there is no evidence in the whole case showing that decedent ever called New York his home. The most he ever said upon the subject was that the "Home-Made Dining Saloon" was his "headquarters" while he was in the city, an expression indicating a *temporary* sojourn rather than a permanent residence. So that the testimony thus far leaves the question in doubt as to whether he ever intended to change his domicil of origin, and if so, what location he had selected for his future domicil. But there is testimony, which seems to me sufficient to create a preponderance, and to establish the fact, that he regarded Smyrna as his home, and that he intended so to regard it, at a time when there seems to have been no motive for misrepresentation. For there is no evidence in the case to show that the motive of his registering himself as of New Jersey had any relation to his apprehension that he might be taxed in this city; that is a mere inference, drawn by counsel from his miserly character, but which does not amount to proof of any

such motive.   In each case, however, where he declared
that his home was not in New York, but in Smyrna,
there seems to have been no motive for misrepresenting
the fact.   But the testimony which is to my mind most
pertinent and significant upon this question is found in
the will itself, in decedent's handwriting, where he states
in substance that he is a resident of Smyrna, indicating
that his domicile of origin had not been changed.   This
statement was voluntarily and deliberately made, and I
am unable to conceive any reason why he should, in his
last will and testament, state an untruth in respect to
his domicil.   For it was an instrument secret in its
nature, and excluded from public eyes, only to be ex-
amined after his decease, and which could not in any
way affect his credit, or his liability to taxation.   If he
was then of sound and disposing mind, as both parties
concede for the purposes of this case, it seems to me a
conclusion *irresistible*, that when he thus wrote himself
down as of Smyrna, Chenango County, he in substance
said, my itinerancy has been with the fixed determina-
tion to ultimately return to Smyrna ; and I have never
intended to fix my domicil elsewhere.

I do not regard the fact that decedent's principal
investments, and the residence of his executors, were in
the city, as sufficient to establish his domicil here, in
view of the temporary nature of his sojourn, and his re-
peated declarations, corroborated by the statement con-
tained in his last will and testament.

I am of the opinion that this court has no jurisdiction
of the probate of this will, and that the proceedings for
that reason should be dismissed.

Ordered accordingly.